UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE JUAN PUGA,<br><br>Plaintiff,<br><br>v.<br><br>United States of America,<br><br>Defendant. | Case No.  15-CV-01131-LHK<br><br>**ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>Re: Dkt. No. 1 |

On March 11, 2015, Petitioner Jose Juan Puga ("Petitioner") filed a motion pursuant to 28 U.S.C. § 2255 challenging his sentence based on allegations of ineffective assistance of counsel. *See* ECF No. 48 (Motion to Set Aside, Correct, or Vacate Sentence Pursuant to 28 U.S.C. § 2255) ("Petition").[1]

On May 26, 2015, the Court issued an Order directing the United States to respond. ECF No. 51. The United States moved for an Order Finding Waiver of Privilege and Allowing Defense Counsel to Discuss Petitioner's Claims With the Government and to Provide Declaration to the Court on July 8, 2015. ECF No. 54. The Court granted the Government's motion on July 15, 2015, finding that Petitioner had waived the attorney-client privilege between Petitioner and his prior defense counsel, Curtis V. Rodriguez. ECF No. 55. The United States thereafter filed its

---

[1] All ECF citations refer to Case No. 12-CR-00387-LHK, unless otherwise noted.

15-CV-01131-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

1

Opposition ("Opp'n") on July 24, 2015, ECF No. 56, which included the declaration of Petitioner's prior defense counsel ("Rodriguez Decl."), ECF No. 56-1. Petitioner filed a reply on August 20, 2015. ("Reply") ECF No. 57.

## I. BACKGROUND

### A. The Indictment and Petitioner's Plea Agreement

On May 16, 2012, Petitioner was indicted in the Northern District of California for four counts of possession with intent to distribute and distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and (b)(1)(C), and one count of possession with intent to distribute and distribution of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *See* ("Indictment") ECF No. 5. The Indictment alleged that on or about March 27, April 30, and May 8, 2012, Petitioner knowingly and intentionally possessed with the intent to distribute and distributed more than 50 grams of methamphetamine and 56 grams of heroin. *Id*. at 1–2. On May 20, 2013, the Government filed an information for increased punishment based on Petitioner's prior felony drug conviction under 21 U.S.C. § 851. ECF No. 23.

On September 11, 2013, with the assistance of retained counsel Curtis V. Rodriguez, Petitioner pleaded guilty to Count 3 of the indictment, which charged him with distribution and possession with intent to distribute methamphetamine. *See* ECF No. 28 ("Plea Agreement"). Petitioner's written plea agreement was executed before the undersigned judge pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A). *Id*. Rule 11(c)(1)(A) provides that where a defendant pleads guilty to a charged offense or a lesser or related offense, the plea agreement may specify that the Government will "not bring, or will move to dismiss, other charges" against the defendant.

Here, the Plea Agreement provided, in relevant part:

*The Defendant's Promises*
1. I agree to plead guilty to Count Three of the captioned Indictment charging me with distribution [of], and possessing with intent to distribute, methamphetamine, a Schedule II narcotic controlled substance, in violation of 21 U.S.C. §§ 841(a)(l) and 841(b)(l)(A)(viii). I agree that the elements of the offense are as follows: (a) on or about the date identified in the Indictment, I knowingly possessed 50 grams or more of actual methamphetamine, its salts,

15-CV-01131-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

2

isomers, and salts of its isomers; and (b) I possessed that methamphetamine with the intent to deliver it to another person. I agree that the maximum penalties for 21 U.S.C. §§ 841(a)(l) and 841(b)(1)(A)(viii) are as follows:

| | | |
|---|---|---|
| a. | Mandatory minimum prison sentence | 20 years |
| b. | Maximum prison sentence | Life |
| c. | Maximum fine | $20,000,000 |
| d. | Maximum supervised release term | Life |
| e. | Minimum supervised release term | 10 years |
| f. | Mandatory special assessment | $100 |
| g. | Mandatory and discretionary denial of federal benefits upon conviction of drug offenses, 21 U.S.C. § 862 and § 862a | |

I acknowledge that, before I entered my plea of guilty, the government filed an information alleging a prior drug felony conviction, pursuant to 21 U.S.C. § 851, which established the maximum and mandatory minimum penalties identified above, including the minimum prison sentence of twenty years. I further understand that I am charged with an offense that involves 50 grams or more of actual methamphetamine, its salts, isomers, and salts of its isomers, and that I have the right to require the government to prove to a jury beyond a reasonable doubt the quantity of drugs charged in Count Three. If the government did not meet its burden of proving the quantity of drugs charged, then the above-described maximum penalties would be lower.

2. I agree that I am guilty of the offense to which I am pleading guilty . . . .

3. I agree to give up all rights that I would have if I chose to proceed to trial, including the rights to a jury trial with the assistance of an attorney; to confront and cross-examine government witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth Amendment claims; to any further discovery from the government; and to pursue any affirmative defenses and present evidence.

4. I agree to give up my right to appeal my conviction, the judgment, and any orders of the Court. I also agree to waive any right I have to appeal any aspect of my sentence, including any orders relating to forfeiture and/or restitution.

5. I agree not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was ineffective in connection with the negotiation of this Agreement or the entry of my guilty plea. I also agree not to seek relief under 18 U.S.C. § 3582.

15-CV-01131-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

3

6. I agree not to ask the Court to withdraw my guilty plea at any time after it is entered. I understand that by entering into this Agreement: (a) I agree that the facts set forth in Paragraph 2 of this Agreement shall be admissible against me under Fed. R. Evid. 801(d)(2)(A) in any subsequent proceeding, including at trial, in the event I violate any of the terms of this Agreement, and (b) I expressly waive any and all rights under Fed. R. Crim. 11(f) and Fed. R. Evid. 410 with regard to the facts set forth in Paragraph 2 of this Agreement in any such subsequent proceeding. I understand that the government will not preserve any physical evidence obtained in this case.

7. I agree that the Court will use the Sentencing Guidelines to calculate my sentence. . . . I further agree that (a) my criminal history category is VI, (b) the Sentencing Guidelines offense level will be calculated as follows, and (c) I will not ask for any other adjustment to or reduction in the offense level or for a downward departure from the Guidelines range as determined by the Court:

    i. Base Offense Level, U.S.S.G. § 2Dl.l(a)(5)    34

    ii. Specific offense characteristics:    None

    iii. Acceptance of Responsibility: If I meet the requirements of U.S.S.G. § 3El.l through sentencing, I may be entitled to a three-level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue to manifest an acceptance of responsibility through and including the time of sentencing.

    -3

    iv. Increase/decrease for role in the offense    None

    v. Safety valve:    Not eligible

    vi. Adjusted offense level:    31

. . .

11. I agree that this Agreement contains all of the promises and agreements between the government and me . . . .

. . .

*The Defendant's Affirmations*

16. I confirm that I have had adequate time to discuss this case, the evidence, and the Agreement with my attorney, and that my attorney has provided me with all the legal advice that I requested.

15-CV-01131-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

4

17. I confirm that while I considered signing this Agreement, and at the time I signed it, I was not under the influence of any alcohol, drug, or medicine that would impair my ability to understand the Agreement.

18. I confirm that my decision to enter a guilty plea is made knowing the charges that have been brought against me, any possible defenses, and the benefits and possible detriments of proceeding to trial. I also confirm that my decision to plead guilty is made voluntarily and that no one coerced or threatened me to enter into this Agreement.

Plea Agreement ¶¶ 1–18.

### B.    Petitioner's Plea of Guilty

On October 26, 2011, pursuant to the binding Plea Agreement, Petitioner pleaded guilty before the undersigned judge to one count of possession of methamphetamine with intent to distribute. *See* ("Plea Tr.") ECF No. 44, at 11:12–18. During the proceedings in which Petitioner, under penalty of perjury, changed his plea from not guilty to guilty, the Court and Petitioner engaged in the following colloquy:

THE COURT: Did you read this plea agreement?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand the plea agreement?

THE DEFENDANT: Yes, ma'am

THE COURT: Have you had enough time to discuss the plea agreement with your attorney?

THE DEFENDANT: Yes, ma'am.

THE COURT: Has your attorney been able to answer your questions about the plea agreement?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you satisfied with the services your attorney has provided to you?

THE DEFENDANT: Yes, ma'am.

THE COURT: Other than the promises that are contained in this plea agreement, has anyone else promised you anything if you plead guilty?

THE DEFENDANT: No, ma'am.

THE COURT: Has anyone made any threats against you in order to get you to plead guilty?

THE DEFENDANT: No, ma'am.

THE COURT: Is your decision to plead guilty free and voluntary?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you taken any drug or medication that affects your ability to think clearly, understand what is happening, and make decisions?

THE DEFENDANT: No, ma'am.

*Id*. at 4:5–5:6.

At the hearing, Petitioner acknowledged that he understood the maximum penalties under the law:

MR. GUENTERT: The mandatory minimum prison sentence in this case is 20 years; the maximum sentence is life; the maximum fine is $20,000,000; the maximum supervised release term is life; the minimum supervised release term is 10 years; and there's also a mandatory special assessment of $100.

THE COURT: There's also mandatory and discretionary denial of federal benefits upon conviction of drug offenses, and if you are not a U.S. citizen, there may be immigration and other consequences, such as deportation. Do you understand the maximum penalties provided by law, Mr. Puga?

THE DEFENDANT: Yes, ma'am.

*Id*. at 6:2–13.

Petitioner also acknowledged that he had the right to be represented by an attorney and that the court would appoint an attorney if he could not afford one, and that he understood he was giving up his rights to plead not guilty, to a jury trial, to present defenses at that trial, to appeal, and to collaterally attack his conviction and sentence:

THE COURT: I'm now going to ask you questions to see if you understand the rights that you have and to see if you're willingly giving up those rights.

THE DEFENDANT: Yes.

15-CV-01131-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

6

1   THE COURT: So the first right is, do you understand that you have the right to plead not guilty?

2   THE DEFENDANT: Yes, ma'am.

3   THE COURT: Do you give up that right, sir?

4   THE DEFENDANT: Yes, ma'am.

5   THE COURT: Do you understand that you have the right to a jury trial?

6   THE DEFENDANT: Yes, ma'am.

7   THE COURT: Do you give up that right?

8   THE DEFENDANT: Yes, ma'am.

9   

10  THE COURT: Do you understand that you have the right to be represented by a lawyer at trial and at every stage of these proceedings?

11  THE DEFENDANT: Yes, ma'am.

12  THE COURT: Do you understand that if you could not afford a lawyer, the court would appoint a lawyer to represent you?

13  

14  THE DEFENDANT: Yes, ma'am.

15  THE COURT: Do you understand that you have the right at trial to see, hear, and ask questions of witnesses against you?

16  

17  THE DEFENDANT: Yes, ma'am.

18  THE COURT: Do you give up that right, sir?

19  THE DEFENDANT: Yes, ma'am.

20  THE COURT: Do you understand that you have the right to testify and to present evidence in your defense at trial?

21  

22  THE DEFENDANT: Yes, ma'am.

23  THE COURT: Do you give up that right?

24  THE DEFENDANT: Yes, ma'am.

25  . . .

26  THE COURT: Do you understand if this case were to go to trial and you were to be convicted, you would have the right to appeal your conviction, the judgment,

27  15-CV-01131-LHK

28  ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

7

your sentence, and any orders made by this court?

THE DEFENDANT: Yes.

THE COURT: Do you understand that under paragraph 4 of your plea agreement, you're giving up your right to appeal?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you have the right to file motions or petitions attacking orders made by this court, attacking your conviction, attacking your sentence?

THE DEFENDANT: Yes.

THE COURT: But under paragraph 5 of your plea agreement, you're giving up that right, except you are keeping the right to argue that your lawyer was not effective in negotiating this plea agreement or in your entry of a guilty plea. Is that what you wish to do, sir?

THE DEFENDANT: Yes, ma'am.

*Id*. at 6:18–9:3.

### C. Petitioner's Attempted Proffers and Sentencing

Following Petitioner's change of plea, on January 24 and February 6, 2015, Petitioner made two separate proffers of information to the Government in an attempt to induce the Government to move for a downward departure pursuant to 18 U.S.C. § 3553(e). Rodriguez Decl. ¶¶ 8–10; Opp'n at 2. After the first proffer, the Government indicated that Petitioner's information was inadequate to warrant a downward departure below the twenty year mandatory minimum. Opp'n at 6. Petitioner then made a second proffer, which again did not produce any information valuable enough to the Government to warrant a downward departure. *Id*.

On April 25, 2012, after reviewing the Presentence Report, and hearing from the Petitioner, defense counsel, government counsel, and the probation officer, the Court sentenced Petitioner to 240 months imprisonment followed by ten years of supervised release. ECF No. 99, at 6:12–7:4 ("Sentencing Tr."). The Court had no discretion to impose a sentence less than the twenty year mandatory minimum, although the actual guideline range for the single count to which Petitioner pleaded guilty would have been lower, from 188 to 235 months. *Id*. at 10:20–24.

## II. DISCUSSION

### A. Standard of Review

A Section 2255 motion to set aside, correct or vacate a sentence of a person in federal custody entitles a prisoner to relief "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Under Section 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, [u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration in original) (internal quotation marks omitted). A court need not hold an evidentiary hearing where the prisoner's allegations, when viewed against the record, either do not state a claim for relief or are so palpably incredible as to warrant summary dismissal. *See United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996); *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004). Accordingly, an evidentiary hearing is required only if: (1) a petitioner alleges specific facts, which, if true would entitle him to relief; and (2) the petition, files, and record of the case cannot conclusively show that the petitioner is entitled to no relief. *See Howard*, 381 F.3d at 877.

### B. Ineffective Assistance of Counsel

A petitioner's claim of ineffective assistance of counsel is governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on such a claim, Petitioner must show that: (1) counsel's representation fell below the range of competence demanded of attorneys in criminal cases; and (2) that Petitioner was prejudiced by counsel's representation.[2] The reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. In order to demonstrate prejudice, Petitioner must "show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The *Strickland* test also

---

[2] Courts may address the two prongs of the *Strickland* test in whichever order is most efficient, and need not address one if the other is lacking. *Strickland,* 466 U.S. at 697.

15-CV-01131-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

9

1 applies to claims that a guilty plea was not knowing and voluntary. *Hill v. Lockhart*, 474 U.S. 52,
2 58–59 (1985). In that case, Petitioner must demonstrate that there is a reasonable probability that,
3 but for counsel's alleged errors and coercion, Petitioner would not have pleaded guilty and would
4 have insisted on going to trial. *Id.*

5 Petitioner argues that his guilty plea was not voluntary because he was unaware of the
6 consequences of the plea by virtue of ineffective assistance of counsel. Petition, at 4. Specifically,
7 Petitioner claims that his former counsel failed to apprise him of the consequences of pleading
8 guilty and misrepresented the sentence he would receive. ECF No. 50-1 ¶¶ 12, 19, 23 ("Puga
9 Affidavit"). Petitioner alleges that his counsel informed him that he was facing multiple charges
10 which could result in a life sentence, but that he might be able to plead to a single count. *Id.* ¶¶ 7,
11 8. Petitioner further alleges that his attorney informed him that he had "no defense at trial" and
12 that "the only way to proceed in this case was to plead guilty or face a certainty of life
13 imprisonment." *Id.* ¶ 12. Petitioner attests that he "did not believe that [he] had any choice, based
14 on his [counsel's] advice, but to plead guilty as he suggested." *Id.* ¶ 13.

15 However, Petitioner also alleges that he did not understand what sentence he would face if
16 he pleaded guilty. Petitioner states that he did not understand that his plea would subject him to an
17 enhanced sentence in light of his prior convictions, and that he would therefore be subject to a
18 mandatory minimum sentence of twenty years. *Id.* ¶ 10. Petitioner alleges that "when [his
19 attorney] tried to relate the issue concerning 'consequences of the plea,' [Petitioner] did not
20 understand how or why [he] would receive a sentence above that which was authorized by law for
21 the count of the indictment that [he] agreed that [he] had violated." *Id.* ¶ 17.  According to
22 Petitioner, he "did not understand the concept of sentencing enhancement," and his attorney did
23 not explain it to him in such a way so he could understand it. *Id.* Petitioner alleges that "[f]rom
24 [his] earlier conversations with Mr. Rodriguez, he advised in no uncertain terms that [Petitioner]
25 would receive a sentence of seven years." *Id.* ¶ 23. Finally, Petitioner states that "if counsel had
26 effectively and clearly communicated to [Petitioner] that [he] would definitely receive a

27 15-CV-01131-LHK
28 ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

mandatory minimum sentence of 20-years imprisonment—irrespective of the Court's advice—[Petitioner] would have elected to proceed to trial and take [his] chances." *Id*. ¶ 25.

For the following reasons, the Court finds that Petitioner's claim of ineffective assistance of counsel does not pass either prong of the *Strickland* test.

### 1. Deficient Performance

Applying the first prong of the *Strickland* test, the Court finds that Petitioner cannot show that his former counsel's performance fell below an objective standard of reasonableness.

Petitioner's claims that he did not understand the sentence he faced in pleading guilty are contradicted by the plea agreement which Petitioner signed in open court and his testimony at his plea hearing. Petitioner expressly acknowledged in the plea agreement that a "minimum prison sentence of twenty years" applied to the offense to which Petitioner pleaded guilty. Plea Agreement ¶ 1. Petitioner also acknowledged in his plea agreement that before he pleaded guilty, "the government filed an information alleging a prior drug felony conviction, pursuant to 21 U.S.C. § 851, which established the maximum and mandatory minimum penalties identified above, including the minimum prison sentence of twenty years." *Id*. During the plea hearing, Petitioner affirmed that he had adequate time to discuss the case and the plea agreement with his attorney, and that his attorney provided him with all requested legal assistance. *Id*. ¶ 16. Petitioner further affirmed that Petitioner entered into the plea agreement voluntarily and was not coerced or threatened. *Id*. ¶ 18. At the plea hearing, Petitioner stated on the record that he understood the mandatory minimum sentence was twenty years. *See* Plea Tr. at 6:2–13 ("MR. GUENTERT: The mandatory minimum prison sentence in this case is 20 years . . . . THE COURT: . . . Do you understand the maximum penalties provided by law, Mr. Puga? THE DEFENDANT: Yes, ma'am."). The Court also notes that Petitioner's first language is English.[3] Petitioner, who graduated from high school, *see id*. at 4:2–4, read the plea agreement, *see id.* 4:5–6. Petitioner also

---

[3] The Government states that Petitioner's first language is English, which Petitioner does not dispute in his reply. Opp'n at 7. Furthermore, Petitioner's plea and sentencing hearings were conducted in English.

15-CV-01131-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

11

has extensive prior experience with the criminal justice system. *See* Plea Agreement ¶ 7 (acknowledging petitioner's prior criminal history placed him in category VI).

While not insurmountable, the plea record constitutes a formidable barrier to a collateral attack on a guilty plea based on involuntariness, and overcoming that barrier requires more than conclusory allegations. *Blackledge v. Allison*, 431 U.S. 63, 64 (1977). A Petitioner's statements made under oath and in open court are accorded significant weight. "[S]olemn declarations in open court carry a strong presumption of verity." *Shah v. United States*, 878 F. 2d 1156, 1162 (9th Cir. 1989) (quoting *Blackledge*, 431 U.S. at 74).

In contrast to the unambiguous terms of the plea agreement and Petitioner's statements on the record at his plea hearing, Petitioner offers only his own unsupported allegations that he did not understand the consequences of his plea and that his counsel informed him that he would receive a seven year sentence. These allegations fall far short of overcoming the strong presumption of verity that attaches to Petitioner's repeated statements made under oath and in open court that he understood the terms of the plea agreement. Moreover, Petitioner's allegations are contradicted by the sworn testimony of his former counsel, who states that "the Defendant was fully informed before and after the change of plea that he was certain to receive the twenty-year mandatory minimum unless he provided substantial information to the Government." Rodriguez Decl. ¶ 11.

In sum, Petitioner's contentions that his attorney failed to apprise him of the consequences of his guilty plea are not credible in light of the extensive evidence in the record indicating that Petitioner understood the consequences of pleading guilty and agreed to the terms of the plea agreement. The Court therefore finds that Petitioner has not demonstrated that his former counsel's performance fell below an objective standard of reasonableness such that his plea should be deemed involuntary.

### 2. Prejudice

Turning to the second prong of the *Strickland* test, the Court finds that Petitioner has not

1  shown prejudice as a result of counsel's alleged failure to apprise Petitioner of the consequences
2  of pleading guilty. To prevail on the instant motion, Petitioner must demonstrate that there is a
3  reasonable probability that, but for counsel's alleged errors, Petitioner would not have pleaded
4  guilty and would have insisted on going to trial. *Lockhart*, 474 U.S. at 58–59. As discussed above,
5  Petitioner's uncorroborated statement that his attorney told him he would receive a seven year
6  sentence is insufficient to overcome the plea record's "formidable barrier to a collateral attack on a
7  guilty plea." *Blackledge*, 431 U.S. at 64. However, even if the Court were to credit Petitioner's
8  allegations that his former counsel told him he would receive a seven year sentence, and that
9  Petitioner did not understand the concept of an "enhanced sentence," Petitioner has not shown
10 prejudice because the text of the plea agreement itself, and the Court's plea colloquy with
11 Petitioner unambiguously informed Petitioner that the consequences of his guilty plea included a
12 mandatory minimum sentence of twenty years. *See Womack v. Del Papa*, 497 F.3d 998, 1003 (9th
13 Cir. 2007) (where court clearly informed defendant prior to his entry of a guilty plea that he faced
14 a possible sentence of life imprisonment without the possibility of parole, defendant could not
15 demonstrate he was prejudiced by his attorney's earlier prediction that his guilty plea was his "best
16 chance" of receiving a sentence of thirty to forty years); *see also Sexton v. Cozner*, 679 F.3d 1150
17 (9th Cir. 2012) (holding that failure to inform defendant that some members of victim's family
18 might support prosecutor's argument that sentences should run consecutively was not prejudicial,
19 as he acknowledged the possibility of consecutive sentences in the plea colloquy); *Doganiere v.*
20 *United States*, 914 F.2d 165, 168 (9th Cir.1990) (holding that the petitioner "suffered no prejudice
21 from his attorney's [erroneous] prediction because, prior to accepting his guilty plea, the court
22 explained that the discretion as to what the sentence would be remained entirely with the court");
23 *United States v. Garcia*, 909 F.2d 1346, 1348 (9th Cir.1990) (explaining that an erroneous
24 sentence prediction "does not entitle a defendant to challenge his guilty plea").
25     In his affidavit, Petitioner alleges that his former counsel advised him that it was crucial
26 for him to answer the Court's questions at his sentencing hearing "in a manner that indicated [he]

27 15-CV-01131-LHK
28 ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE
   PURSUANT TO 28 U.S.C. § 2255

United States District Court
Northern District of California

fully understood the questions and proceeding." Puga Affidavit ¶ 19. Petitioner also alleges that his former counsel had advised him to answer the Court's questions "directly," but warned him that if he did not provide "the answer expected by the Court," his guilty plea would be rejected. *Id*. ¶ 15. Although Petitioner does not explain what inference should be drawn from these allegations, Petitioner appears to be arguing that he did not understand the proceedings and the plea agreement, but that his counsel effectively told him to say he did anyway, and that the end result would be that he received a seven rather than twenty year sentence. The Court finds Petitioner's claim that he pleaded guilty in reliance on his counsel's representation that he would receive a seven year sentence despite repeated warnings by the Court that Petitioner faced a mandatory minimum sentence of twenty years and Petitioner's repeated acknowledgements that he understood the mandatory minimum sentence palpably incredible.

Finally, Petitioner's argument that he was prejudiced by his reliance on his former counsel's allegedly erroneous plea advice is undermined by the fact that Petitioner avoided the possibility of receiving a significantly more severe sentence by pleading guilty. Petitioner does not dispute that he was charged with multiple offenses which could have resulted in life imprisonment, or the fact that his prior counsel informed him that going to trial risked a sentence greater than twenty years. Puga Affidavit ¶¶ 7–13; *see also* Rodriguez Decl. ¶¶ 3-4. Nor does Petitioner dispute that his counsel advised Petitioner that in light of his criminal history, there was a possibility that the Government would file another sentencing enhancement which would have imposed a thirty year mandatory minimum were he convicted at trial. Rodriguez Decl. ¶ 3. In the end, Petitioner's plea agreement included only one of the five original counts, and by pleading guilty and accepting responsibility, Petitioner received a three-level reduction in his sentencing level. Petitioner does not dispute that had he gone to trial, his Base Offense Level would have been 34 with a Category VI Criminal History, meaning that under the Sentencing Guidelines his recommended sentence would have been between 262 and 327 months. Opp'n at 9. By pleading guilty instead of going to trial, Petitioner avoided at least twenty-two months of additional

1  incarceration and possibly up to life imprisonment.

2  Ultimately, Petitioner's allegations of ineffective assistance of counsel are not credible,
3  and Petitioner's bare allegation that he would have rejected the plea agreement is insufficient
4  evidence to show a reasonable probability that, but for his counsel's alleged errors, Petitioner
5  would not have pleaded guilty and would have insisted on going to trial. Accordingly, the Court
6  finds that Petitioner has failed to demonstrate that he was prejudiced by his prior counsel's
7  performance.

8  **C.    Request for an Evidentiary Hearing**

9  In his Reply Petitioner argues that an evidentiary hearing is required to resolve Petitioner's
10 allegations. Reply at 1. However, a court need not hold an evidentiary hearing where a prisoner's
11 allegations, when viewed against the record, either do not state a claim for relief or are so palpably
12 incredible as to warrant summary dismissal. *See McMullen*, 98 F.3d at 1159; *Howard*, 381 F.3d at
13 877. An evidentiary hearing is required only if: (1) a petitioner alleges specific facts, which, if true
14 would entitle him to relief; and (2) the petition, files, and record of the case cannot conclusively
15 show that the petitioner is entitled to no relief. *See Howard*, 381 F.3d at 877.

16 For the reasons stated above, the Court finds that the petition, files, and record of the case
17 conclusively show that Petitioner is entitled to no relief. Petitioner's allegations are contradicted
18 by the terms of the plea agreement, his testimony at the plea hearing, and his former counsel's
19 declaration. Furthermore, even were the Court to credit Petitioner's allegations, the Court still
20 would find no prejudice resulting from the allegedly erroneous advice rendered by Petitioner's
21 former counsel. Accordingly, because the record here conclusively shows that Petitioner is not
22 entitled to relief, the Court DENIES Petitioner's request for an evidentiary hearing.

23 **III.   CONCLUSION**

24 In sum, Petitioner's grounds for habeas relief lack merit. Petitioner failed to demonstrate
25 that ineffective assistance of counsel rendered his guilty plea was involuntary under *Strickland*.
26 For the reasons stated above, Petitioner's Motion to Set Aside, Correct, or Vacate Sentence

27 15-CV-01131-LHK
28 ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE
   PURSUANT TO 28 U.S.C. § 2255

Pursuant to 28 U.S.C. § 2255 is DENIED WITH PREJUDICE. No certificate of appealability shall issue, as Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment against the Petitioner and in favor of the Respondent. The Clerk shall further close the case file in Case No. 15-CV-01131-LHK.

**IT IS SO ORDERED.**

Dated: October 9, 2015

_____
Lucy H. Koh
United States District Judge